**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO   DIVISION

| | | |
|---|---|---|
| ALGERNOA CRENSHAW | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO: 3:07CV00101 SWW |
| NUCOR CORPORATION | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |
| | * | |

## <u>ORDER</u>

Plaintiff Algernoa Crenshaw ("Crenshaw") brings this employment discrimination case against Defendant Nucor Corporation ("Nucor").  Before the Court is Nucor's motion for summary judgment (docket entries #22. #23. #24) and Crenshaw's response in opposition (docket entries #26, #27, #28, #29).  After careful consideration, and for the reasons that follow, summary judgment will be granted in favor of Nucor.

### I.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.*

1

*Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).        "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

The following facts are undisputed.  Crenshaw, who is black, began working for Nucor on April 13, 1998 in the shipping department of the company's plant in Hickman, Arkansas.  In January 2006, Nucor eliminated 16 jobs in the shipping department, including Crenshaw's. Nucor retained Crenshaw as an employee and transferred him to a general operator position in the cold mill department.[1]  Two months after Crenshaw's transfer, he applied for a pickle line crane operator position in the cold mill department, but another applicant was hired.   Crenshaw acknowledges that he did not have enough experience for the crane operator job, and the successful applicant, a white employee,  was the "the best man for the job."  *See* docket entry #22, Ex. A, Part I at 54.  One month after Crenshaw submitted his first application for a pickle

---

[1]Crenshaw does not claim that his transfer from the shipping department to the cold mill department amounted to adverse employment action.

line crane operator position, he reapplied for another opening for the same position.  This time,

Nucor selected Marcus Sutton, who is white, for the job.

　　　Crenshaw worked in the cold mill department until he resigned from Nucor in August

2006.  Crenshaw claims that Nucor discriminated against him on the basis of race by  (1)

denying him three promotions, (2) denying him training, (3) subjecting him to a racially hostile

work environment, and (4) constructively discharging him--all in violation of Title VII, 42

U.S.C.

§ 1981, and the Arkansas Civil Rights Act.[2]

### III.

### Failure to Promote

　　　Because Crenshaw presents no evidence that directly points to the presence of a

discriminatory motive,[3]  the Court will analyze his failure-to-promote claims under the three-

stage order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).   To

---

　　　[2]"We analyze Title VII disparate treatment claims, § 1981 claims, and ACRA claims in the same manner."  *Davis v. KARK-TV, Inc*.  421 F.3d 699, 703 -704 (8th Cir. 2005)(citing *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n. 3 (8th Cir.2000) (noting that claims premised under the ACRA are analyzed in the same manner as Title VII claims); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir.1997) (noting that the *McDonnell Douglas* analysis is applicable to Title VII disparate treatment and § 1981 claims)).

　　　[3]Crenshaw contends that he has direct evidence of race discrimination because Nucor's executive officers are white, and only 8 or 9 of Nucor's 70 supervisors are black.  However, general statistical evidence concerning the racial makeup of Nucor's workforce does not qualify as direct evidence that Nucor discriminated against Crenshaw individually.  Additionally, such evidence is insufficient, without more, to raise a genuine issue of fact regarding Crenshaw's failure-to-promote claims.

establish a *prima facie* case of discrimination based on a failure to promote, Crenshaw  must

show that (1) he was a member of a protected group; (2) he was qualified and applied for a

promotion to an available position; (3) he was not selected for the position; and (4) a similarly-

situated employee who was not a member of a protected group was selected instead. *Allen v.*

*Tobacco Superstore, Inc.* 475 F.3d 931, 937 (8th Cir. 2007)(citing *Shannon v. Ford Motor Co*.,

72 F.3d 678, 682 (8th Cir. 1996)).

If Crenshaw establishes a prima facie case, the burden of production shifts to Nucor,

which must rebut the presumption of discrimination with evidence that Crenshaw was rejected,

or someone else was preferred, for a legitimate, nondiscriminatory reason. *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Once Nucor meets its burden,

Crenshaw may prevail by pointing to evidence which, if believed, would expose Nucor's stated

reason as a mere pretext for intentional discrimination. *Id.*

First Bid for Pickle Line Crane Operator Position.  Nucor asserts that any claim regarding

Crenshaw's first bid for a pickle line crane operator position must be dismissed based on

Crenshaw's own testimony that he was not qualified for the job and that Nucor selected best-

qualified applicant.  Crenshaw responds that he lacked qualifications for the job because Nucor

discriminated against him in the area of training, but he points to no evidence to support this

claim.  Crenshaw cites only to his own complaint allegations and his answers to Nucor's

discovery requests stating that Nucor permitted him to train only on his days off but allowed

white employees (namely, Larry Deaton, Neil Pickens, and Marcus Sutton) to train during their

regular shifts.

Crenshaw's bare allegations regarding training discrimination fail to save his failure-to-

promote claims because he presents no evidence that he was denied a promotion based on lack of training.[4]  In fact, the record establishes that considerations other than training influenced the hiring decisions at issue.  *See* docket entry #22, Ex. D, ¶ 8.

Second Bid for Crane Operator Position.  In April 2006, one month after Crenshaw's first bid for a crane operator position was rejected, he submitted a second bid for a pickle line crane operator position.  Nucor  asserts that, even assuming that Crenshaw can establish a prima facie case of discrimination, it rejected his application for a legitimate, nondiscriminatory reason:  the successful applicant, Marcus Sutton, was more qualified for the job than Crenshaw.

When an "employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863 (8th Cir. 1997)(citations omitted).   "[A] comparison that reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate would not raise an inference of racial discrimination." *Id.*

 Bryan Lane, who served as Crenshaw's supervisor in the cold mill department, testifies that factors considered in selecting the most qualified candidate for an open position in the cold mill department include overall proficiency in performing the essential functions of the job sought, safety record, attitude, ability to work with others, and overall understanding of cold mill operations."  Docket entry #22, Ex. D, ¶ 8.  Lane testifies that when jobs become open in the cold mill department, supervisors and peers are involved in the selection process.  *Id.*, ¶ 3.  He

---

[4]Additionally, Crenshaw provides no evidence that he was similarly situated to white employees who received favorable treatment in the area of training.

explains that a panel of employees  interviews and evaluates the candidates for a position and submits a recommendation to department supervisors and the department manager, who makes the ultimate hiring decision.  *Id.*

Lane testifies that when Crenshaw and Sutton applied for the pickle line crane operator position in April 2006, Sutton had at least one-year of experience operating a crane nearly identical to the crane used on the pickle line.  Additionally, Lane testifies that Sutton began working in the cold mill department in 2003, and "people knew [his] work habits and were comfortable with him."  *Id.*, ¶ 6.   Lane states: "I . . . believe that once people were more familiar with Alge [Crenshaw], he would have been selected for a pickle line crane operator opening or another promotion.  If Alge had remained at Nucor and enabled people in the cold mill to become better acquainted with his work habits, he would have had a good chance to be promoted."  *Id.*, ¶ 11.

Nucor also presents the deposition testimony of William Glaser, the manager of the cold mill department.  Glaser testifies that when Crenshaw and Sutton competed for the crane operator job in April 2006, Sutton was a long-time cold mill employee who possessed "vast" knowledge about operating cranes.  Docket entry #22, Ex. B, Part II, at 58-59.  Glaser testifies that Sutton was more qualified than Crenshaw for the job based on "all his previous experience and actually doing the job."  *Id*. at 84.

Crenshaw asserts that he was qualified for the pickle line crane operator position based on his eight years' experience operating cranes in the shipping department.  However, Nucor presents evidence, including Crenshaw's own deposition testimony, indicating that experience operating cranes in Nucor's shipping department is not equivalent to experience operating the

6

type of cranes used in the company's cold mill department.  It is undisputed that the cranes used in the cold mill department are operated from a remote control on the ground, but the cranes Crenshaw operated in the shipping department are controlled from an overhead cab.  *See* docket entry #22, Ex. A, Part I at 12-13, Ex. B, Part II at 63-67.

"Identifying those strengths that constitute the best qualified applicant is . . . a role best left to employers . . . . " *Duffy v. Wolle*, 123 F.3d 1026, 1038 (8th Cir. 1997).  Crenshaw presents no evidence to establish that he was more qualified than Sutton, and the evidence indicates that he was less qualified.  Crenshaw has failed to show that race played a role in Nucor's decision, and the Court finds that Nucor was free to prefer Sutton's experience in the cold mill department over Crenshaw's experience in the shipping department.

Supervisor Position.  Crenshaw charges that Nucor denied him a supervisor's position because of his race.  Crenshaw claims that Glaser told him "not to bid . . . because it required a four-year degree and or experience."  Docket entry #1, ¶ 27.  Crenshaw further alleges that he has a four-year college degree and was qualified for the job, "but a white employee with only a two-year degree obtained while at the mill got the job." *Id.*, ¶ 30.  Finally, Crenshaw alleges: "Chuck Ryan, a white Nucor employee, received the supervisor's position over Ken Robinson and Clyde Lyde, both African Americans."  Docket entry #1, ¶ 35.

Other than these undetailed and confusing allegations, Crenshaw provides little information regarding his claim that Nucor failed to promote him to a supervisor's position.  However, a search of the record reveals that a daytime supervisor's position in the cold mill department became available shortly before Crenshaw resigned from Nucor in August 2006.  In deposition, Crenshaw testified that he asked Glaser about his chances of promotion to the

supervisor's position, and Glaser responded, "I would not bid on it, probably not, I would not bid on it."  Docket entry #22, Ex. A, Part III at 217.   Crenshaw never applied for the supervisor's position, and it is undisputed that Nucor awarded the job to Tommy Faulks, who is black.

Nucor asserts that no genuine issues exist regarding Crenshaw's claim that he was denied promotion to a supervisor's position because (1) Crenshaw never applied for the supervisor's position that became available shortly before he resigned from Nucor; (2) Crenshaw does not claim that he was more qualified than Tommy Faulks, the successful applicant; and (3) Nucor awarded the position to a member of Crenshaw's protected class.

Even assuming that Crenshaw's failure to apply for the supervisor's job can be excused,[5] the Court agrees that Crenshaw's claim is foreclosed because his is unable to demonstrate that the job was awarded to a person of similar qualifications who was not a member of his protected class.   In sum, the Court finds no genuine issues for trial  with respect to Crenshaw's failure-to-promote claims.

**Failure to Train**

To make out a prima facie case of discrimination based on a failure-to-train, Crenshaw must show that he suffered an adverse employment action and that similarly-situated employees who were not members of the protected class were treated differently.  *See Higgins v. Gonzales,*

---

[5]The Eighth Circuit has held that a formal application for a job opening is not required to establish a *prima facie* case of discrimination if  the opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application.  *See Gentry v. Georgia-Pacific Corp.,* 250 F.3d 646, 652 (8th Cir.2001).   In this case, there is no allegation that the supervisor's position was not posted.

481 F.3d 578, 584 (8ᵗʰ Cir. 2007)(quoting *Davis v. KARK-TV*, *Inc.*, 421 F.3d 699, 704 (8ᵗʰ Cir.

2005)).  Nucor asserts that Crenshaw cannot make this showing, and the Court agrees.

"'[An] adverse employment action must be one that produces a material employment

disadvantage.'" *Higgins v. Gonzales*, 481 F.3d 578, 584 (8ᵗʰ Cir. 2007)(quoting *Kerns v. Capital

Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir.1999)).   "'Termination, cuts in pay or benefits,

and changes that affect an employee's future career prospects are significant enough to meet the

standard, as would circumstances amounting to a constructive discharge.'" *Id.*  However, "'an

employer's denial of an employee's request for more training is not, without more, an adverse

employment action.'"  *See id.* at 585(quoting *Box v. Principi*, 442 F.3d 692, 697 (8th

Cir.2006)(quoting *Griffith v. Des Moines*, 387 F.3d 733, 737 (8th Cir.2004)).

In an attempt to show adverse employment action, Crenshaw speculates that denial of

training opportunities prevented him from attaining job qualifications necessary for promotion.

However, the undisputed record shows that hiring decisions in the cold mill department are

based on several factors other than training, and Crenshaw presents no evidence showing that he

was rejected for a promotion to a particular position based on a lack of training.  Additionally,

Crenshaw presents no evidence that white employees who received favorable treatment in the

area of training were similarly situated to him.  Accordingly, the Court finds no issues for trial

with respect to Crenshaw's failure-to-train claim.

### Hostile Working Environment

Nucor moves for dismissal of Crenshaw's hostile environment claim on grounds that he

failed to exhaust his administrative remedies and he is unable to make out a prima facie case for

a hostile work environment.[6]

In most cases, to exhaust Title VII's administrative remedies, an individual must timely file a charge of discrimination and receive a right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC").  *See* 42 U.S.C. § 2000e-5(b), (c), (e).  "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Cottrill v. MFA, Inc.,* 443 F.3d 629, 634 (8th Cir.2006)(citation omitted).

In this case, Crenshaw's administrative charge alleges that Nucor denied him a promotion and discriminated against him the area of training.  *See* docket entry #22, Ex. H.  The charge also states that Crenshaw voluntarily resigned his employment with Nucor because he was not able to advance within the company.  *See id.*  But the charge contains no allegations regarding racial harassment.  *See id.*

Crenshaw claims that even though he did not mention racial harassment in his EEOC charge, he "discussed racial harassment with [the] EEOC and racial harassment claims can be expected to grow out of failure to promote/constructive discharge claims based on race discrimination."  Docket entry #28, ¶ 46.

The Court disagrees that Crenshaw's disparate treatment claims are somehow broad

---

[6]Nucor also asserts the affirmative defense provided under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). However, the *Ellerth-Faragher* affirmative defense applies only to cases of vicarious liability for supervisor harassment, see *Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004), and Crenshaw alleges that he was harassed by coworkers.

enough to encompass a hostile environment claim.  An investigation of Crenshaw's claims that Nucor denied him a promotion and training and constructively discharged him based on his race would not reasonably be expected to uncover evidence of racial harassment.  *See  Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836-37 (8th Cir.2000)* (holding that the plaintiff failed to exhaust administrative remedies with regard to his claim that he was unlawfully subjected to verbal harassment because such a claim was not reasonably related to his claims of discriminatory demotion and termination).  Furthermore, Crenshaw provides no evidence that his claims regarding racial harassment were in fact investigated by the EEOC.  Accordingly, Crenshaw's hostile environment claim should be dismissed for failure to exhaust administrative remedies.

Even considering Crenshaw's hostile environment claim on the merits, it does not survive summary judgment.   To establish a hostile work environment claim, Crenshaw must show that he was subjected to unwelcome race-based harassment that was sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment.  *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)*.  Additionally, because Crenshaw is claiming co-worker harassment, he must also show that Nucor "knew or should have known of the conduct and failed to take proper remedial action." *Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 987 (8th Cir.1999)*.

During Crenshaw's deposition, he provided details regarding his claim that "from the beginning of his employment at Nucor" he experienced  "racial epithets written in view of Nucor employees and racial slurs spoken by Nucor employees."  Regarding written racial epithets, Crenshaw testified that on one occasion, he read an e-mail message sent to another employee

that contained racial jokes.  *See* docket entry #22, Ex. A at 20.  Crenshaw testified that he did not

report the offensive e-mail because he did not want to appear to be a trouble maker.  *See id.* at

33-34.   Additionally, Crenshaw stated that when he worked in the shipping department, he saw

a racial epithet written on a portable toilet in the scrap yard.  *Id.* at 21.  Crenshaw testified that he

reported what he observed to a supervisor, and the offensive graffiti was removed.  *See id.* at 20.

Regarding vocal racial slurs, Crenshaw testified that "in the 90's" he was once referred to

as "boy" by an employee from another company, who was immediately ordered by a Nucor

supervisor to apologize to Crenshaw.  *See id.* at 21, 27-28.  Crenshaw testified that he was called

"boy" by his co-workers many times.  Finally, Crenshaw stated that co-workers who could not

decipher his radio communications told him to "stop speaking  Indian" and commented that he

was  speaking  "Swahili."  *See id.* at 23, 35-36.   Crenshaw found co-worker comments about

speaking "Indian" and "Swahili" offensive because he has "Indian heritage."  *See id.* at 23.   In

addition to his deposition testimony, Crenshaw submits the deposition testimony of other

employees who state that they experienced racial harassment.

Crenshaw's evidence simply does not establish the existence of extreme working

conditions that amount to a change in the terms and conditions of employment.  *See, e.g.,*

*Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir.2004) (finding racial remarks,

made directly to plaintiff, once a month for two years by owner and operators, insufficient to

render the workplace objectively hostile).  In determining whether sufficient evidence of a

hostile work environment has been presented, the totality of the circumstances must be

considered, including the frequency and severity of the discriminatory conduct, whether such

conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and

whether the conduct unreasonably interfered with the employee's work performance.  *See  Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 2007 WL 1201867, *3 (8th Cir. April 25, 2007)(citing *Duncan v. General Motors Corp.*, 300 F.3d 928, 884 (8th Cir. 2002)).  Here, there is no evidence that Crenshaw experienced frequent, physically threatening or humiliating discriminatory conduct.  Nor is there any evidence that alleged discriminatory conduct interfered with Crenshaw's work performance.

As for evidence regarding the experiences of other Nucor employees, Crenshaw presents no evidence that he personally knew about instances of racial harassment suffered by other employees during his tenure at Nucor.   Accordingly, such evidence does nothing to bolster Crenshaw's hostile environment claim. *See Carter v. Chrysler Corp.,* 173 F.3d 693, 701 (8th Cir.1999) (permitting a hostile environment claimant to introduce evidence of offensive men's room graffiti *she learned about through hearsay during her employ*, even though she had never been inside the men's room).

### Constructive Discharge

Crenshaw alleges: "On August 26, 2006, Plaintiff was constructively discharged when he resigned because of failure to promote."  Docket entry #1, at 5, docket entry #27, at 22.  Nucor asserts that, as a matter of law, Crenshaw was not constructively discharged.  The Court agrees.

To succeed with a constructive discharge claim, Crenshaw must prove that Nucor deliberately rendered his working conditions so intolerable that he was essentially forced to quit. *Willis v. Henderson*, 262 F.3d 801, 810 (8th Cir. 2001).  Crenshaw must prove that the working conditions were *objectively* intolerable, that is, intolerable to a reasonable person. *Id.*  Crenshaw may "satisfy the intent element by demonstrating that he quit as a reasonably foreseeable

consequence of his employer's discriminatory actions." *Id.* (citations omitted).

The Court finds that Nucor's decision to deny Crenshaw's bids for promotion for legitimate, non-discriminatory reasons did not render his working conditions objectively intolerable.   Further, the Court finds that no reasonable fact finder could conclude from the evidence presented that Crenshaw endured working conditions that would be intolerable to a reasonable person.   Accordingly, there are no issues for trial with respect to Crenshaw's constructive discharge claim.

## IV.

For the reasons stated, the Court finds that Defendant's motion for summary judgment (docket entry #22) should be and it is hereby GRANTED.  There being no issues remaining for trial, this case is DISMISSED WITH PREJUDICE pursuant to the judgment entered together with this order.  It is further ordered that Defendant's motion to strike untimely designated witnesses (docket entry #16) is DENIED AS MOOT.

IT IS SO ORDERED THIS 25TH DAY OF JUNE, 2008.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE